*Threat v. Bedford City School District, et al.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **DR. JATINA N. THREAT,** ) | CASE NO.: |
| ) | |
| Plaintiff, ) | JUDGE: |
| ) | |
| v. ) | |
| ) | |
| **BEDFORD CITY SCHOOL DISTRICT;** ) | **COMPLAINT FOR VIOLATION** |
| **BOARD OF EDUCATION** ) | **OF CIVIL RIGHTS** |
| ) | *(42 U.S.C. §§ 1983,1988; 18 U.S.C* |
| **DR. CASSANDRA J. JOHNSON**, ) | *§ 2701 et seq.; O.R.C. § 4113.52)* |
| Superintendent of Bedford City School ) | |
| District, (Individual and Official Capacity), ) | . |
| ) | ***JURY TRIAL DEMANDED*** |
| **ANTHONY A. AKINS**, ) | |
| Board President of the Bedford City ) | |
| School Board of Education ) | |
| (Individual and Official Capacity), ) | |
| ) | |
| **EVA BOYINGTON,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| ) | |
| **CHRIS CALLENDER,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| ) | |
| **ANGELIC CARTER,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| ) | |
| **MONTEZ MORTON,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| **)** | |
| **PAUL WORSENCROFT**, ) | |
| Employee of the Bedford City School ) | |

*Threat v. Bedford City School District, et al.*

District (Individual and Official Capacity),     )
          )
          Defendants.     )

## PRELIMINARY STATEMENT

This is a case about retaliation against a witness. Dr. JaTina N. Threat, a senior administrator with an unblemished six-year record as the Bedford City School District's Executive Director of Human Resources, was serving as a material witness in the Board of Education's own authorized investigation of Superintendent Cassandra J. Johnson when Superintendent Johnson, the subject of that investigation, directed the unauthorized access of Dr. Threat's District email credentials and placed Dr. Threat on indefinite administrative leave without notice, charges, or the opportunity to respond. The retaliation was not incidental to the investigation. It was directed at the witness, by the subject of the investigation, during the investigation itself.

The retaliation began earlier. On January 30, 2026, Dr. Threat participated in a Google Meet meeting with Superintendent Johnson that had been convened by the Superintendent. During that meeting Dr. Threat expressed candid concerns about the integrity of the District's investigative processes and the reliability of information being provided to the Board. The meeting was recorded in its entirety. The recording is in the possession of Plaintiff's counsel. Within weeks of that meeting, Dr. Threat was subjected to progressive isolation, exclusion from her own HR functions, conduct consistent with electronic monitoring of her communications, and ultimately, on March 6, 2026, placement on indefinite paid administrative leave while she was attending a professional conference out of state. The stated basis was a personal off-duty Facebook comment on a matter of national political discourse that made no reference to the District. That stated basis is pretextual.

On April 9, 2026, Plaintiff obtained documentary confirmation that Superintendent Johnson instructed the outgoing IT Director to provide Dr. Threat's District email credentials to a subordinate employee, Paul Worsencroft, who accessed Dr. Threat's stored electronic communications during the period of her witness participation. That access was not authorized by Dr. Threat, was not authorized by any District policy permitting targeted non-work-related surveillance of a specific employee and served no legitimate work-related purpose. It was directed surveillance of a protected witness by the very official under investigation.

The constitutional violations alleged here are not isolated. Within the same six-month period, Superintendent Johnson placed two other senior administrators, Principal Khalisha A. Lewis and Assistant Principal Reginald C. Walker, on paid administrative leave under the same procedurally deficient template: no pre-deprivation notice, no specification of charges, no opportunity to respond, no defined resolution mechanism. The Board had notice of the pattern as to Lewis and Walker before Dr. Threat was deprived of the same protections. The pattern establishes independent municipal liability under *Monell* and its progeny.

This Complaint seeks redress for violations of the First, Fourth, and Fourteenth Amendments; the Stored Communications Act, 18 U.S.C. §§ 2701–2712; Ohio Revised Code § 4113.52; and the terms of Dr. Threat's employment agreement. It seeks immediate reinstatement, back pay, compensatory and punitive damages, injunctive relief, and attorney's fees. Each day of ongoing deprivation without process is a continuing constitutional injury.

## I. JURISDICTION AND VENUE

1. This action arises under the First Amendment, Fourth Amendment, and Fourteenth Amendment to the United States Constitution; 42 U.S.C. §§ 1983 and 1988; and the Stored

*Threat v. Bedford City School District, et al.*

Communications Act, 18 U.S.C. §§ 2701–2712. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, including claims arising under Ohio Revised Code § 4113.52 and any applicable state contract claims.

3. Venue is proper in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in Cuyahoga County, Ohio, and all Defendants reside and/or conduct business within this judicial district.

## II. PARTIES

### A. Plaintiff

4. Plaintiff Dr. JaTina N. Threat (hereinafter "Dr. Threat" or "Plaintiff") is an individual residing in Willoughby, Lake County, Ohio. At all times relevant to this Complaint, Dr. Threat was employed by the Bedford City School District for a total of six years, most recently as Executive Director of Human Resources, a position she held for over two years with an unblemished performance record. She brings this action in her individual capacity.

### B. Defendants

5. Defendant Bedford City School District (hereinafter "the District" or "BCSD") is a public school district and governmental entity organized under the laws of the State of Ohio, located at 3 Hemisphere Way, Bedford, Ohio 44146. The District is a "person" subject to suit under 42 U.S.C. § 1983 as a local government entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

6. Defendant Dr. Cassandra J. Johnson (hereinafter "Dr. Johnson" or "Superintendent Johnson") is and was at all relevant times the Superintendent of the Bedford City School District. She is sued in both her individual and official capacities. At all relevant times, Dr. Johnson acted under color of state law. As Superintendent, she is and was the final policymaking authority

*Threat v. Bedford City School District, et al.*

for employment decisions within the District. Her personal participation in each adverse act described herein renders qualified immunity unavailable.

7. Defendant Anthony A. Akins (hereinafter "Akins") is and was at all relevant times the President of the Bedford City School District Board of Education. He is sued in both his individual and official capacities. At all relevant times, Mr. Akins acted under color of state law.

8. Defendants Eva Boyington, Chris Callender, Angelic Carter, and Montez Morton (hereinafter "Members") are and were at all relevant times Members of the Bedford City School District Board of Education. They are sued in both their individual and official capacities. Board members who had knowledge of a pattern of constitutional violations and failed to take corrective action bear individual § 1983 liability for deliberate indifference constituting tacit authorization.

9. Defendant Paul Worsencroft (hereinafter "Worsencroft") is and was at all relevant times an employee of the Bedford City School District. He is sued in his individual and official capacities. Mr. Worsencroft directly participated in the unauthorized access of Plaintiff's stored electronic communications at the direction of Superintendent Johnson and is named as an individual defendant under the Stored Communications Act and 42 U.S.C. § 1983.

## III. FACTUAL BACKGROUND

### A. Dr. Threat's Employment and Institutional Role

10. Dr. Threat joined the Bedford City School District in August 2019 and rose to the position of Executive Director of Human Resources, a role she held through the date of her placement on administrative leave on March 6, 2026. Her employment history is characterized by uniformly

*Threat v. Bedford City School District, et al.*

positive performance evaluations and an unblemished disciplinary record spanning more than six years.

11. As Executive Director of Human Resources, Dr. Threat occupied the most institutionally central personnel role in the District. She was responsible for overseeing all employment actions, investigations, disciplinary procedures, and related personnel matters District-wide. This role placed her at the center of every significant adverse employment action taken during her tenure, including the actions described in this Complaint.

12. By virtue of her institutional role and tenure, Dr. Threat possesses unparalleled direct knowledge of what policies, procedures, and practices are standard, customary, and precedented within the District, and which actions have no precedent in District history. Her testimony regarding procedural departures is not that of a disgruntled employee; it is the institutional testimony of the District's own chief HR officer.

**B. The Board-Authorized Investigation of Superintendent Johnson**

13. Beginning in or about late 2025, the Bedford City School District Board of Education authorized an independent investigation of Superintendent Johnson in connection with a complaint filed with the Ohio Department of Education Ethics Board. The Board retained Robin Carlin of Clarity-Concepts as independent investigator.

14. Dr. Threat was a material witness in the Board-authorized investigation of Superintendent Johnson. On or about March 13, 2026, Dr. Threat participated in a formal investigative interview with Robin Carlin, lasting approximately six and one-half hours, addressing due process violations, retaliation, and conduct designed to interfere with the investigative process itself.

15. At the conclusion of the interview, investigator Carlin advised Dr. Threat to obtain legal counsel. Carlin expressed documented concern that the information provided suggested potential retaliation, intimidation, and conduct designed to obstruct or undermine the ongoing investigation.

**C. The January 30, 2026, Meeting and Protected Speech**

16. On Friday, January 30, 2026, at approximately 3:02 p.m., Dr. Threat participated in a Google Meet meeting with Superintendent Johnson. Dr. Kenya Harrington, Executive Director of Academic Achievement, was also present. The stated purpose was to debrief the Board executive session of the prior evening.

17. During the January 30 meeting, Dr. Threat candidly expressed concerns about the integrity of the District's investigative process, due process failures affecting District employees, and the reliability of information being provided to the Board. These statements addressed institutional governance and the lawfulness of government employment processes, matters of quintessential public concern. *See Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

18. Dr. Threat's duties as Executive Director of Human Resources did not include a responsibility to evaluate, assess, or render opinions regarding the Superintendent. Her HR portfolio was directed at personnel matters affecting District employees other than the Superintendent. She had no assigned role in the Board-authorized investigation of Superintendent Johnson; her participation in that investigation was as a material witness, not as a District official executing HR responsibilities.

*Threat v. Bedford City School District, et al.*

19. The January 30, 2026, meeting was not a regularly scheduled HR meeting. It was convened by Superintendent Johnson herself, at a time and in a forum of the Superintendent's choosing, for the stated purpose of debriefing a Board executive session of the prior evening. Dr. Threat attended at the Superintendent's invitation. Dr. Threat's statements during the meeting responded to matters raised by the Superintendent; they were not part of any assigned HR deliverable, report, or institutional product. Dr. Threat was not tasked with producing a memorandum, evaluation, or recommendation arising from the meeting.

20. Accordingly, Dr. Threat's January 30 statements were not "ordinarily within the scope of [her] duties" as Executive Director of Human Resources. *Lane v. Franks*, 573 U.S. 228, 240 (2014). She spoke as a citizen and as a witness, not as an HR officer executing an assigned responsibility. That she had acquired the information she conveyed through her employment does not convert her speech into employee speech under the First Amendment. *Id.* at 236.

21. Dr. Threat's statements on January 30, 2026, were not made pursuant to her official duties as HR Director. The meeting was convened by Superintendent Johnson to solicit Dr. Threat's candid personal views. Superintendent Johnson's response was, in Dr. Threat's direct observation, "very defensive."

22. The January 30, 2026, meeting was recorded in its entirety. The recording is in the possession of Plaintiff's counsel. It constitutes contemporaneous documentary evidence of Dr. Threat's protected speech, its content, and the Superintendent's immediate reaction. It is the single most consequential piece of evidence in this matter.

23. Following the January 30 meeting, Dr. Threat's working relationship with Superintendent Johnson deteriorated significantly. Dr. Threat was subjected to reduced interactions, exclusion

from decisions and conversations that her HR role would normally require, and sustained pressure to revisit and recant the concerns she had expressed.

## D. Electronic Monitoring — Warning Signs

24. In early February 2026, Superintendent Johnson responded to an email from Dr. Threat by stating, in substance, that the Superintendent could see who was being blind-copied on emails exchanged between them. This statement placed Dr. Threat on notice that her electronic communications were being monitored. The statement intensified Dr. Threat's distrust and corroborates the subsequent confirmation of directed account surveillance.

## E. The Facebook Post and Placement on Administrative Leave

25. On or about March 4–5, 2026, Dr. Threat, acting in her private capacity, off-duty, using a personal device and personal Facebook account, commented on a public news post published by a local news station concerning a matter of national political discourse. The comment was made outside working hours and outside any District-related context. The comment did not identify the District, did not reference Dr. Threat's employment, and bore no relationship to her official duties.

26. The District's subsequent invocation of the March 4–5 Facebook comment as the stated basis for placing Dr. Threat on administrative leave is pretextual. The temporal proximity between Dr. Threat's protected January 30, 2026, speech and her March 6, 2026, placement on leave, approximately five weeks, combined with the documented pattern of progressive isolation, exclusion, and surveillance during the intervening period, establishes that the Facebook comment was a post hoc justification rather than the actual motivating basis for the adverse action. The District has introduced no evidence that the Facebook comment caused any actual disruption to District operations, any interference with Dr. Threat's performance of her duties, or any impairment of the District's provision of public services.

*Threat v. Bedford City School District, et al.*

27. On March 6, 2026, while attending a professional HR conference in Columbus, Ohio, Dr. Threat received a telephone call from Superintendent Johnson at 10:54 a.m. informing her that she was being placed on paid administrative leave "due to a Facebook post." Written notice was transmitted by email to Dr. Threat's personal address at 12:17 p.m. The written leave letter cited "allegations of unprofessional conduct/conduct unbecoming to the profession."

28. On March 12, 2026, Superintendent Johnson's administrative assistant, Beth Loomis, emailed Dr. Threat requesting attorney contact information. That same day, Superintendent Johnson sent Dr. Threat a text message stating: "Don't respond. If you have representation, have them call Christine Cossler *(of Weston Hurd, Counsel for the District)* asap. Just wanted to remind you of the same protocol." This message is in the possession of Plaintiff's counsel.

**F. Procedural Departures — Pretext Evidence**

29. Immediately upon Dr. Threat's placement on administrative leave, her District email account (jthreat@bedfordschools.org) was disabled. Based on Dr. Threat's six-plus years as Executive Director of Human Resources, during which she was personally responsible for implementing all District personnel actions, the immediate disabling of a District email account upon placement on paid administrative leave was a substantial departure from District practice during her tenure. In the ordinary course, email-access restrictions of that scope were reserved for termination or post-resignation, and only following the completion of due process.

30. On March 11, 2026, the District's Head of Security, Chuck Hudson, contacted Dr. Threat to inform her that District property would be retrieved from her residence. Dr. Threat refused this demand. Based on Dr. Threat's institutional knowledge as Executive Director of Human Resources, the dispatch of security personnel to an employee's private residence to retrieve

District property during an active paid administrative leave proceeding, before the conclusion of any investigation or due process, was not a standard practice within the District during her tenure. The March 11, 2026, letter from Superintendent Johnson characterized these demands as "standard protocol." Dr. Threat is aware of no such protocol.

31. These procedural departures were deliberate acts of isolation, intimidation, and disempowerment directed at a material witness in the Board's active investigation of the very official who authorized those measures.

32. At no point before or during the imposition of administrative leave was Dr. Threat provided written notice of the specific policy or rule allegedly violated. She was given no opportunity to respond before the adverse action was imposed. She was not informed of any investigative timeline or resolution date. No investigative meeting has occurred as of the date of this filing.

33. Dr. Threat's employment record contains no prior discipline. Her performance evaluations are uniformly positive. She has an annual salary of $132,000. Her contract was due to extend through at least August 2027.

**G. The Directed Electronic Surveillance of a Represented Witness**

34. On or about April 9, 2026, Dr. Threat provided documentary confirmation that Superintendent Johnson instructed the outgoing IT Director to provide the credentials for Dr. Threat's District email account (jthreat@bedfordschools.org) to Paul Worsencroft, a District employee and interim IT Director.

35. Worsencroft accessed Dr. Threat's District email account both before and after her placement on administrative leave. This access encompassed the period during which Dr. Threat was participating as a witness in the Board's active investigation of Superintendent Johnson.

36. The instruction to access Dr. Threat's email credentials originated from Superintendent Johnson, the direct subject of the investigation in which Dr. Threat was serving as a witness. Superintendent Johnson's direction of unauthorized electronic surveillance of her own investigative witness, through a subordinate employee / IT officer, constitutes deliberate obstruction of the Board's authorized investigative process and aggravated retaliation against a protected witness. It eliminates any need to infer retaliatory motive.

37. The Bedford City School District Board of Education is independently aware of and disturbed by this disclosure, having received notice from Plaintiff's counsel on April 9, 2026. The Board's reaction signals an internal fracture between the Board and Superintendent Johnson that is itself a significant institutional development.

38. Plaintiff has demanded in writing confirmation of whether the electronic surveillance extended to the accounts of co-parties Lewis and Walker. The District has not responded as of the date of this filing. The District's non-response to a direct written inquiry submitted with an explicit deadline will be presented as evidence of awareness and intentional concealment.

### H. The Institutional Pattern — Monell Foundation

39. The adverse actions against Dr. Threat did not occur in isolation. Within the same six-month period, September 2025 through March 2026, Superintendent Johnson placed at least two other senior BCSD administrators on paid administrative leave under the same constitutional template: no pre-deprivation notice, no written specification of charges before adverse action, no opportunity to respond, no substantiating evidence, and no defined resolution timeline.

40. Ms. Khalisha A. Lewis, Head Principal of Bedford High School, was placed on leave on September 29, 2025, and has remained on leave for over six months without a substantiating

finding, a defined process, or a constitutionally adequate resolution. Mr. Reginald C. Walker, Assistant Principal and CTE Coordinator, was placed on leave on October 3, 2025, under identical procedural conditions.

41. All three administrators provided independent accounts corroborating the same constitutional template without coordination. This is not a pattern constructed by counsel. It is a pattern documented across the District's own actions and records.

42. The Board of Education had notice of this pattern beginning with Ms. Lewis's placement on leave in September 2025 and had ongoing notice throughout the period during which all three administrators remained on leave. The Board's failure to take any corrective action constitutes deliberate indifference sufficient to support individual § 1983 liability under *Monell* and its progeny.

## IV. CLAIMS FOR RELIEF

### COUNT I

*Procedural Due Process — Fourteenth Amendment / 42 U.S.C. § 1983*
Against All Defendants

43. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

44. At all relevant times, Dr. Threat possessed a constitutionally protected property interest in her continued administrative employment with the Bedford City School District. Dr. Threat's employment was governed by a written administrator contract subject to the protections of Ohio Revised Code § 3319.02, which authorizes administrator contracts of two to five years in duration and provides that no such contract "may be terminated by a board except pursuant to section 3319.16 of the Revised Code," and no such contract may be suspended except pursuant to § 3319.17 or § 3319.171. Under Ohio law, a public employee employed pursuant

*Threat v. Bedford City School District, et al.*

to a written contract terminable only for cause holds a legitimate claim of entitlement to continued employment sufficient to constitute a property interest protected by the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); Bailey v. Floyd Cnty. Bd. of Educ., 106 F.3d 135, 141 (6th Cir. 1997) (existence of property interest in public employment depends on state law and the terms of the employment relationship). Whether a plaintiff possesses such a property interest is determined by reference to state law and the terms of the employment relationship. *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Loudermill*, 470 U.S. at 538.

45. The protection afforded by the Due Process Clause is not limited to outright termination. The constitutional deprivation alleged in this Count is not Dr. Threat's paid leave status standing alone. It is the combined effect of: (a) indefinite separation from the professional duties, institutional standing, and access to District systems that are core components of Dr. Threat's position as Executive Director of Human Resources; (b) the public stigmatization of Dr. Threat through a formal charge of "unprofessional conduct/conduct unbecoming to the profession," published through official District channels, accompanied by the unprecedented dispatch of security personnel to her private residence and the public disabling of her District email account; and (c) the absence of any defined resolution timeline, any specified charges, any explanation of the evidence, or any opportunity to respond. Where a public employee holds a protected property interest in her position and the State takes action that simultaneously (i) functionally removes the employee from the duties of her position and (ii) publicly stigmatizes the employee with charges that seriously damage her standing and reputation in the community, the combined deprivation triggers the procedural protections of the Due Process Clause. See *Paul v. Davis*, 424 U.S. 693, 701, 710–12 (1976) (recognizing stigma-plus

*Threat v. Bedford City School District, et al.*

framework under which reputation damage coupled with alteration of legal status implicates Due Process); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"); *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (stigma-plus framework applicable to public employment decisions).

46. The *Loudermill* procedural floor requires: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to respond before the adverse action is imposed.

47. Defendants violated Dr. Threat's *Loudermill* rights in the following independently actionable respects: (a) no advance written notice of specific charges was provided before leave was imposed on March 6, 2026; (b) no explanation of the employer's evidence was provided before or contemporaneously with the adverse action; (c) no opportunity to respond to charges was afforded; and (d) as of the date of this filing, no investigative meeting or constitutionally adequate process has been provided.

48. The deprivation of Dr. Threat's constitutionally protected property interest without due process of law, under color of state law, by Defendants acting individually and in concert, constitutes a violation of the Fourteenth Amendment actionable under 42 U.S.C. § 1983.

49. The ongoing nature of this deprivation, with no defined investigative timeline, no adequate process offered, and each day of unjustified leave constituting an independent constitutional harm, supports both continuing violation damages and equitable relief.

50. Superintendent Johnson personally authorized and directed the adverse action described herein. Qualified immunity is unavailable. The right of a public employee holding a contractual

*Threat v. Bedford City School District, et al.*

property interest to pre-deprivation notice of charges, an explanation of the evidence, and an opportunity to respond has been clearly established since 1985. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The right of a public employee to be free from official action that simultaneously (a) deprives the employee of a property interest and (b) publicly stigmatizes the employee, without opportunity to respond, has been clearly established since 1976. *aul v. Davis*, 424 U.S. 693 (1976). *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A reasonable public official in Superintendent Johnson's position would have known that issuing a formal stigmatizing charge of "unprofessional conduct/conduct unbecoming to the profession" against a senior administrator with a six-year unblemished record, and simultaneously removing her from all professional duties and institutional access, without any notice of the specific conduct charged, without any opportunity to respond, and without any defined resolution mechanism, violated clearly established law. Punitive damages are warranted under *Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT II

### *First Amendment Retaliation — 42 U.S.C. § 1983*
*Against Defendants Johnson, Akins, Board Members, and BCSD*

51. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

52. The First Amendment protects public employees from adverse employment action taken in retaliation for speech on matters of public concern. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Garcetti v. Ceballos*, 547 U.S. 410 (2006). To prevail on a First Amendment retaliation claim in the Sixth Circuit, a public employee must establish: (1) the employee engaged in constitutionally protected speech as a citizen on a matter of public concern; (2) the employee's interest in speaking outweighs the government employer's interest under *Pickering* balancing;

*Threat v. Bedford City School District, et al.*

and (3) the protected speech was a substantial or motivating factor in the adverse action. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017). Each element is satisfied on the facts pled.

53. On January 30, 2026, Dr. Threat spoke on matters of public concern during her Google Meet meeting with Superintendent Johnson. She expressed concerns about the integrity of the District's investigative process, due process failures affecting District employees, and the reliability of information being provided to the Board. These statements addressed institutional governance and the lawfulness of government employment processes, classic public concern speech under *Connick v. Myers*, 461 U.S. 138 (1983).

54. The January 30, 2026, meeting was recorded in its entirety. The recording is in counsel's possession. It constitutes direct documentary evidence of Dr. Threat's protected speech and its content.

55. Dr. Threat's January 30 statements were not made pursuant to her official duties. The meeting was convened by Superintendent Johnson to solicit Dr. Threat's personal views on matters of institutional governance. Speech made as a private citizen, not as part of official duties, is protected under *Garcetti*.

56. The fact that Dr. Threat's January 30, 2026, statements concerned information she acquired through her employment does not strip her speech of First Amendment protection. The Supreme Court expressly clarified in *Lane v. Franks*, 573 U.S. 228, 236 (2014), that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee, rather than citizen, speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an

*Threat v. Bedford City School District, et al.*

employee's duties." As pled above, Dr. Threat's HR role did not include a duty to evaluate or comment upon the Superintendent, and the January 30 meeting was convened by the Superintendent rather than pursuant to any assigned HR deliverable. The Sixth Circuit has applied *Lane* to protect speech by public employees reporting governance concerns up the chain of command. *See Handy-Clay v. City of Memphis*, 695 F.3d 531, 540–43 (6th Cir. 2012) (reversing dismissal of First Amendment retaliation claim where public employee reported institutional misconduct).

57. Dr. Threat's speech addressed the integrity of a public investigation, due process afforded to public employees, and the reliability of information provided to a public Board of Education. The Sixth Circuit has recognized that "the public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986); *see also Westmoreland v. Sutherland*, 662 F.3d 714, 719 (6th Cir. 2011).

58. Alternatively, Dr. Threat independently engaged in protected off-duty speech on March 4–5, 2026, through a personal Facebook comment on a matter of national political significance. The comment referenced no District-related business and bore no relationship to her official duties.

59. Following Dr. Threat's protected speech on January 30, she was subjected to a documented pattern of progressive adverse treatment: exclusion from routine HR functions, restricted access to the Superintendent, pressure to recant her expressed concerns, conduct consistent with electronic monitoring, and ultimately, within five weeks, placement on administrative leave.

*Threat v. Bedford City School District, et al.*

60. The temporal proximity between Dr. Threat's protected speech and her placement on leave, combined with the documented pattern of exclusion and isolation in the intervening period, establishes the requisite causal connection.

61. The proffered basis, an off-duty personal Facebook comment that made no reference to the District, is pretextual. The District's purported interest in regulating this comment does not outweigh Dr. Threat's First Amendment interest in commenting on national political affairs as a private citizen.

62. The *Pickering* balance weighs decisively in Dr. Threat's favor. Her January 30, 2026, speech was delivered privately to the Superintendent in a meeting convened by the Superintendent to solicit her views. The speech was neither shown nor can it be presumed to have impeded Dr. Threat's proper performance of her daily duties or to have interfered with the regular operation of the District's schools. *Cf. Pickering*, 391 U.S. at 572–73. Her subsequent personal Facebook comment bore no relationship whatsoever to District operations, caused no actual workplace disruption, and concerned a matter of national political discourse. The District's interest, as an employer, in suppressing either expression is not significantly greater than its interest in limiting a similar contribution by any member of the general public. *Id.* at 573.

63. The First Amendment retaliation claim is materially aggravated by the subsequent direction of electronic surveillance of Dr. Threat's District email account during the period of her witness participation in the Board's investigation of the Superintendent who ordered that surveillance. This conduct forecloses any inference argument on motive.

*Threat v. Bedford City School District, et al.*

## COUNT III

***Retaliation for Protected Participation in Board-Authorized Investigation — 42 U.S.C. § 1983***
*Against Defendants Johnson, Akins, Board Members, and BCSD*

64. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

65. Dr. Threat participated as a material witness in the Board-authorized investigation of Superintendent Johnson. This participation constitutes protected activity under the First Amendment and applicable federal law.

66. Superintendent Johnson was the direct subject of the investigation in which Dr. Threat participated. Johnson directed the disabling of Dr. Threat's email and the dispatch of security to her residence, measures representing substantial departures from District practice during Dr. Threat's tenure, in temporal proximity to the period during which Dr. Threat's witness participation was underway or anticipated.

67. The direction of electronic surveillance of Dr. Threat's communications during the active investigation period, by the official who was the subject of that investigation, constitutes retaliation designed to chill, punish, and undermine Dr. Threat's protected investigative participation. It independently constitutes obstruction of the Board's own authorized investigative process.

68. This conduct is not protected by qualified immunity. A reasonable official would have known that retaliating against a government employee for participation in an authorized investigation of that official's own conduct was constitutionally prohibited.

## COUNT IV

***Stored Communications Act — 18 U.S.C. §§ 2701–2712***
*Civil Liability Under 18 U.S.C. § 2707*
*Against Defendants Johnson and Worsencroft*

*Threat v. Bedford City School District, et al.*

69. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

70. The Stored Communications Act, 18 U.S.C. § 2701(a), prohibits any person from (1) intentionally accessing without authorization, or intentionally exceeding an authorization to access, (2) a facility through which an electronic communication service is provided, (3) and thereby obtaining, altering, or preventing authorized access to a wire or electronic communication while it is in electronic storage in such system. Civil liability attaches under 18 U.S.C. § 2707. The Sixth Circuit has recognized that email users possess a reasonable expectation of privacy in the contents of their email accounts. *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010). District courts within this Circuit have applied the SCA to unauthorized employer access of employee email accounts. *See Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 754–57 (N.D. Ohio 2013).

71. Dr. Threat's District email account (jthreat@bedfordschools.org) constitutes an electronic communication in electronic storage within the meaning of the Act.

72. Superintendent Johnson instructed the outgoing IT Director to provide Dr. Threat's email account credentials to Paul Worsencroft. Worsencroft intentionally accessed the stored electronic communications in Dr. Threat's account. Plaintiff has documentary confirmation of this access.

73. Neither Superintendent Johnson nor Worsencroft was authorized by Dr. Threat to access the contents of her stored electronic communications. The service-provider exception under 18 U.S.C. § 2701(c)(1) does not shield this conduct. That exception protects legitimate administrative access by the service provider in the ordinary course of providing the communications service. It does not authorize an individual employee, acting at the direction

of another official, to access a specific employee's account for the purpose of surveilling that employee's protected communications during her participation as a witness in an active investigation of the official directing the access. The access alleged here was: (a) directed at Dr. Threat's account specifically, not a class of employees or a category of communications in the ordinary course of IT administration; (b) authorized by no District policy in effect at the time; (c) served no legitimate work-related purpose and supported no administrative function of the communications system; and (d) was undertaken for the personal and self-protective purpose of the official under investigation. Courts construing the SCA's "authorization" requirement in the employer-employee context hold that an employer's status as the operator of an electronic communications system does not, by itself, confer blanket authorization on individual officials to access a specific employee's stored communications for purposes outside the ordinary administration of the system. *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 754–57 (N.D. Ohio 2013) (holding that use of a company-issued device and existence of a general monitoring policy did not authorize a supervisor's review of an employee's stored e-mails where that review fell outside the ordinary scope of administering the service); s*ee also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008) (SCA protects against access that exceeds the scope of any authorization the user has granted). Worsencroft's access exceeded any authorization conferred by his IT role; it was directed, targeted, retaliatory, and outside the scope of legitimate service-provider activity.

74. Civil liability under 18 U.S.C. § 2707 includes actual damages, punitive damages, and attorney's fees. The willful and intentional nature of the access, targeting a specific employee's account during a specific investigative period, at the direction of the subject of that investigation, satisfies the heightened scienter standard for punitive damages under the Act.

*Threat v. Bedford City School District, et al.*

75. Defendants Johnson and Worsencroft are individually liable under the SCA, independent of all § 1983 claims.

## COUNT V

***Fourth Amendment Privacy Violation — 42 U.S.C. § 1983***
*Against Defendants Johnson, Worsencroft, and BCSD*

76. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

77. Dr. Threat maintained a reasonable expectation of privacy in the contents of her electronic communications stored in her District email account. The Supreme Court has recognized that public employees retain constitutionally protected privacy interests in their workplace effects and communications, assessed in light of the operational realities of the workplace. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (plurality); *City of Ontario v. Quon*, 560 U.S. 746, 756–60 (2010). The Sixth Circuit has specifically recognized a reasonable expectation of privacy in the contents of email accounts. *Warshak*, 631 F.3d at 288. This expectation is enforceable against state actors under the Fourth Amendment and 42 U.S.C. § 1983.

78. The unauthorized, warrantless, and deliberate access to Dr. Threat's stored electronic communications, directed by Superintendent Johnson and executed by Worsencroft, constitutes an unreasonable search in violation of the Fourth Amendment. The targeting of a witness's communications during an active Board investigation of the official who directed the access renders any qualified immunity defense unavailable.

79. Even where a public employer possesses a legitimate interest in workplace records, any search or access must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Quon*, 560 U.S. at 761 (citation omitted). The access directed here was not related to any legitimate investigative purpose of the District. It targeted the

*Threat v. Bedford City School District, et al.*

communications of a material witness in the Board's active investigation of the very official who directed the access. No work-related justification can support such a scope, and none has been offered.

## COUNT VI

### *Ohio Whistleblower Retaliation — O.R.C. § 4113.52*
*Against All Defendants*

80. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Ohio Revised Code § 4113.52 protects employees who report violations of state or federal statutes or regulations to appropriate authorities. Dr. Threat reported, and provided evidence of, violations of Ohio law and District policy to Board-authorized investigator Robin Carlin and to the Board of Education itself.

82. Dr. Threat satisfied the procedural requirements of O.R.C. § 4113.52(A)(1)(a). On January 30, 2026, Dr. Threat orally notified Superintendent Johnson, the District officer at whose direction the reported violations were occurring and to whom Dr. Threat reported within the District's administrative chain, of her concerns regarding due process violations, investigative integrity failures, and conduct that Dr. Threat reasonably believed constituted a violation of state law and a criminal offense likely to cause an imminent risk of physical harm, a hazard to public health or safety, or a felony. That oral report was documented contemporaneously by Dr. Threat's audio recording of the meeting, which is in Plaintiff's counsel's possession. Thereafter, Dr. Threat provided substantive information regarding the same subject matter in writing and in formal interview to Robin Carlin, the Board-authorized independent investigator, on March 13, 2026, with the contemporaneous knowledge and at the direction of the Bedford City School District Board of Education. To the extent that any additional procedural requirement of §

*Threat v. Bedford City School District, et al.*

4113.52(A)(1)(a) is applicable, it is excused by the futility of further reporting to the very official whose conduct was the subject of the report, and by the Superintendent's documented acts of retaliation taken within weeks of the oral report and before any written corrective opportunity could reasonably have operated.

83. The adverse employment actions taken against Dr. Threat, including placement on administrative leave, disabling of her District email, dispatch of security to her residence, and direction of surveillance of her electronic communications, constitute prohibited retaliatory conduct under O.R.C. § 4113.52.

84. As a direct and proximate result of this retaliatory conduct, Dr. Threat has suffered the damages described herein and is entitled to all relief available under the statute.

## COUNT VII

### *Monell Municipal Liability — Policy, Custom, and Practice*
*42 U.S.C. § 1983*
*Against Defendant Bedford City School District and Individual Board Defendants*

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. A municipality may be held liable under § 1983 for a single decision by an official with final policymaking authority in the relevant area of decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986). Whether an official possesses final policymaking authority is a question of state and local law for the court. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). At all relevant times, Superintendent Johnson exercised final policymaking authority for the District with respect to the personnel decisions challenged herein. Her directives and decisions described in this

*Threat v. Bedford City School District, et al.*

Complaint therefore constitute official policy of the District and independently subject the District to municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

87. Independently, the constitutional violations alleged herein were not aberrational. Within the six-month period of September 2025 through March 2026, the District applied the same procedurally deficient adverse action template to three senior administrators, Dr. Threat, Ms. Khalisha Lewis, and Mr. Reginald Walker, without pre-deprivation notice, without disclosure of specific charges, without an opportunity to respond, and without substantiating evidence.

88. This consistent pattern of constitutional violation, applied across multiple employees by the District's final policymaking authority, establishes a well-settled custom sufficient to trigger independent *Monell* liability.

89. Plaintiff's *Monell* claim is pled on three independent grounds recognized by the Sixth Circuit: (1) the final-policymaker theory set forth above; (2) a widespread practice or custom sufficiently permanent and well-settled to constitute the functional equivalent of official policy; and (3) deliberate indifference by policymakers to a known pattern of constitutional violations. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005). Each theory is independently sufficient to support District liability.

90. Board members who had knowledge of the deprivations suffered by Lewis and Walker beginning in September and October 2025, and who took no corrective action before Dr. Threat was similarly deprived on March 6, 2026, bear individual § 1983 liability for deliberate indifference constituting tacit authorization of Superintendent Johnson's conduct.

*Threat v. Bedford City School District, et al.*

## COUNT VIII

***Civil Conspiracy to Deprive of Civil Rights — 42 U.S.C. § 1983***
*Against Defendants Johnson and Worsencroft in their Individual Capacities*

91. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

92. A civil conspiracy under 42 U.S.C. § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007) (internal quotation marks omitted). Liability attaches where (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive plaintiff of her constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy.

93. Defendants Johnson and Worsencroft agreed, and acted in concert, to deprive Dr. Threat of her rights under the First, Fourth, and Fourteenth Amendments, the Stored Communications Act, and federal law more generally. The shared objective was the unauthorized surveillance of Dr. Threat's stored electronic communications during her period of witness participation in the Board's investigation of Superintendent Johnson. Overt acts in furtherance of the conspiracy included Superintendent Johnson's directive to the outgoing IT Director to provide Dr. Threat's email credentials to Worsencroft, Worsencroft's actual access of Dr. Threat's account, and the coordinated imposition of administrative leave concurrent with the period of surveillance.

94. The intra-corporate conspiracy doctrine does not shield these Defendants. The Sixth Circuit recognizes an exception where the challenged conduct falls outside the scope of the defendants' employment. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). The exception applies where employees act from personal bias or where the aim of the conspiracy exceeds the reach of legitimate corporate or governmental activity. *Id.* at 840–41. It applies with particular force where an official abuses governmental authority for self-serving purposes.

*Threat v. Bedford City School District, et al.*

*See DiLuzio v. Village of Yorkville*, 796 F.3d 604, 616 (6th Cir. 2015) (scope-of-employment exception applies where official takes governmental action for personal advantage). Superintendent Johnson's direction of surveillance of a witness in the Board's investigation of her own conduct was not a legitimate exercise of her duties as Superintendent; it was a self-protective act undertaken in her personal interest, outside the scope of her employment, and outside any authority any school district could lawfully confer.

95. As a direct and proximate result of the conspiracy, Dr. Threat has suffered the damages described herein. Punitive damages are warranted against Defendants Johnson and Worsencroft in their individual capacities. *Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT IX

### *Breach of Employment Contract*
*Against Defendant Bedford City School District*

96. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

97. Dr. Threat's employment relationship with the District is governed by the terms of her employment agreement, the District's adopted policies, and applicable Ohio law. The District's imposition of indefinite administrative leave without written notice of charges, without adherence to the policy-based due process protections applicable to Dr. Threat's position, and without any defined resolution mechanism constitutes a material breach of the terms of Dr. Threat's employment relationship.

98. As a direct and proximate result of this breach, Dr. Threat has suffered economic damages including loss of compensation, accrued benefits, and contract-based protections, in amounts to be determined at trial.

*Threat v. Bedford City School District, et al.*

## V. DAMAGES

99.     As a direct and proximate result of Defendants' actions described herein, Plaintiff Dr. JaTina N. Threat has suffered and continues to suffer the following damages:

- Loss of income, back pay, and benefits from the date of adverse action through the date of judgment;

- Damage to professional reputation and career trajectory, including interference with professional licensure and foreclosed career advancement opportunities;

- Severe emotional distress, anxiety, and dignitary harm caused by the deliberate and public nature of Defendants' retaliatory conduct;

- Violation of constitutional rights under the First, Fourth, and Fourteenth Amendments, entitling Plaintiff to compensatory and punitive damages;

- Violation of statutory rights under the Stored Communications Act, including actual damages and punitive damages based on the willful and intentional nature of the unauthorized access;

- Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 2707; and

- Such other damages as shall be proven at trial.

100.    Punitive damages are independently warranted against Defendants Johnson and Worsencroft in their individual capacities. Under *Smith v. Wade*, 461 U.S. 30, 56 (1983), a jury may assess punitive damages in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." The Sixth Circuit applies this standard directly. *See King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015). The conduct described herein, the directed surveillance of a witness during an active investigation of the official who ordered that surveillance, the deliberate imposition of isolation procedures representing substantial departures from District practice, and the retaliatory use of governmental authority against a senior District administrator with an unblemished record,

evidences precisely the reckless or callous indifference to clearly established federal rights that *Smith* identifies as the basis for a punitive award.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. JaTina N. Threat respectfully requests that this Court enter judgment in her favor and against all Defendants, and award the following relief:

- A declaration that Defendants' actions as described herein violated the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Stored Communications Act, 18 U.S.C. §§ 2701–2712, and Ohio Revised Code § 4113.52;

- An order immediately reinstating Dr. Threat to her position as Executive Director of Human Resources with full restoration of all rights, benefits, and privileges of employment, or in the alternative, front pay through the expiration of her contract;

- An award of back pay and all accrued compensation from March 6, 2026, through the date of judgment, including all benefits, salary increments, and contractual entitlements;

- An award of compensatory damages for emotional distress, reputational harm, dignitary harm, interference with professional licensure, and foreclosed career opportunities, in an amount to be determined at trial;

- An award of punitive damages against Defendants Johnson and Worsencroft in their individual capacities for their willful, malicious, and deliberate violation of Plaintiff's constitutional and statutory rights, in an amount sufficient to deter similar conduct;

- An award of actual damages, punitive damages, and attorney's fees and costs under 18 U.S.C. § 2707 arising from the Stored Communications Act violations;

- A permanent injunction enjoining Defendants from engaging in further unconstitutional conduct as described herein and from taking any retaliatory action against Plaintiff;

- A declaratory and injunctive order requiring Defendants to preserve in unaltered form, and produce upon request, all electronic communications, access logs, email account metadata, IT administrative records, and any and all documentation reflecting access to the District email accounts of Dr. Threat, Ms. Khalisha A. Lewis, and Mr. Reginald C. Walker from September 1, 2025 through the date of judgment;

- An order requiring the complete expungement from Dr. Threat's personnel file of any and all adverse documentation, notations, or disciplinary entries arising from the events described herein;

*Threat v. Bedford City School District, et al.*

- Approval of Dr. Threat's pending professional license renewal without adverse reference to or notation of any disciplinary action arising from these events;

- An award of attorney's fees and costs pursuant to 42 U.S.C. § 1988;

- Pre- and post-judgment interest as provided by law; and

- Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Dr. JaTina N. Threat hereby demands a trial by jury on all claims so triable pursuant to

Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**Karrie D. Howard, Esq., 0082858**
Howard Legal Services LLC
1414 S. Green Rd., Ste. 203 PMB 16
South Euclid, Ohio 44121
(330) 774-9198
khoward@howardlegalservices.com

*Counsel for Plaintiff Dr. JaTina N. Threat*