**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **DR. JaTINA N. THREAT,** | **Case No. 1:26-cv-00938-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **BEDFORD CITY SCHOOL DISTRICT BOARD OF EDUCATION,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Plaintiff Dr. JaTina Threat's ("Threat") Motion to Reassign Related Cases under L.R. 3.1(b)(3) and to Consolidate for Pretrial Purposes under Fed. R. Civ. P. 42(a) (the "Motion"). (Doc. No. 15.) Defendants Bedford City School District Board of Education ("Bedford"), Angelic Carter ("Carter"), Anthony Akins ("Akins"), Eva Boyington ("Boyington"), Chris Callender ("Callender"), Sharyn Macklin ("Macklin"), Montez Morton ("Morton"), Paul Worsencroft ("Worsencroft"), and Dr. Cassandra Johnson ("Johnson") filed an Opposition on September 14, 2026, to which Threat replied on September 22, 2026. (Doc. Nos. 16, 17.) For the following reasons, the Motion (Doc. No. 15) is DENIED.

## I. Background

On April 20, 2026, Threat filed her Complaint against Bedford, Johnson, Akins, Boyington, Callendar, Carter, Morton, and Worsencroft. (Doc. No. 1.) On July 10, 2026, Bedford, Akins, Boyington, Callendar, Carter, Morton, and Worsencroft filed their Answer. (Doc. No. 6.) On July 27, 2026, Johnson filed her Answer. (Doc. No. 7.)

On July 28, 2026, Threat filed her Amended Complaint. (Doc. No. 9.) Therein, Threat sets

forth the following Causes of Action: Count I - First Amendment Retaliation; Count II - Retaliation for Protected Participation in Board-Authorized Investigation; Count III - Procedural Due Process; Count IV - Deprivation of Liberty Interest and Stigma-Plus; Count V - Stored Communications Act and 18 U.S.C. §§ 2701–2712; Count VI - Fourth Amendment and Unreasonable Search; Count VII - Ohio Whistleblower Retaliation and O.R.C. § 4113.52; Count VIII - *Monell* Municipal Liability; Count IX - Breach of Employment Contract; Count X - Retaliatory Constructive Discharge; and Count XI - Defamation *per se*. Threat also added Macklin as a Defendant in the Amended Complaint. Johnson filed her Answer on August 10, 2026, and the remaining Defendants filed their Answer on August 11, 2026. (Doc. Nos. 12, 13.)

In the preliminary statement section of her Amended Complaint, Threat sets forth the following allegations.

> This is a case about retaliation against a witness, and about what the retaliation ultimately cost her. Dr. JaTina N. Threat, a senior administrator with an unblemished six-year record as the Bedford City School District's Executive Director of Human Resources, was serving as a material witness in the Board of Education's own authorized investigation of Superintendent Dr. Cassandra J. Johnson when Superintendent Johnson, the subject of that investigation, directed the unauthorized access of Dr. Threat's District email credentials and placed Dr. Threat on indefinite administrative leave without notice, charges, or an opportunity to respond. The retaliation was directed at the witness, by the subject of the investigation, during the investigation itself.
>
> The retaliation began with protected speech. On January 30, 2026, in a meeting convened by Superintendent Johnson, Dr. Threat candidly expressed concerns about the integrity of the District's investigative processes and the reliability of information provided to the Board. The meeting was recorded in its entirety, and the recording is in Plaintiff's counsel's possession. Within weeks Dr. Threat was subjected to progressive isolation, exclusion from her HR functions, documented electronic monitoring, and, on March 6, 2026, placement on indefinite paid administrative leave, the stated basis a personal, off-duty Facebook comment on a matter of national political discourse that made no reference to the District. That stated basis is pretextual.

> The retaliation did not end with the leave, and its consequences did not end with Dr. Threat's return. Upon returning to work on June 4, 2026, Dr. Threat was pressed on her first day back to state when she would resign, was informed that the District had referred her to the Ohio Department of Education and Workforce, Office of Professional Conduct, and was told that the District had never investigated the allegations underlying that referral and had nothing to provide the State. Her working conditions were rendered intolerable, and she was constructively discharged, resigning under compulsion on June 15, 2026. The District's stigmatizing conduct foreclosed comparable employment throughout the Northeast Ohio educational-administration community and forced her to relocate her household to obtain comparable work.
>
> These violations were not isolated. Within the same six-month period, Superintendent Johnson placed three other senior administrators, Principal Khalisha A. Lewis, Assistant Principal Reginald C. Walker, and Assistant Principal Claire B. Gowing, on paid administrative leave under the same procedurally deficient template. The Board had documented actual notice of the pattern before it permitted Dr. Threat to be subjected to it.

(*Id.*)

On August 31, 2026, Threat filed her Motion. (Doc. No. 15.) Therein, Threat identifies three cases that she contends are related to the case here: *Lewis v. Bedford City Sch. Dist. Bd. of Educ*., No. 1:26-cv-00941-CEF (Fleming, J.); *Walker v. Bedford City Sch. Dist. Bd. of Educ*., No. 1:26-cv-00943-DCN (Nugent, J.); and *Gowing v. Bedford City Sch. Dist. Bd. of Educ*., No. 1:26-cv-01271-JPC (Calabrese, J.). (*Id.* at PageID #166.) All four cases have not proceeded past the pleadings stage, and Defendants have indicated that they intend to file Motions for Judgment on the Pleadings in each case. The Court summarizes the relevant allegations from those cases below.

**A. Allegations in Khalisha Lewis' Amended Complaint**

On the same day Threat initiated this case, Khalisha Lewis ("Lewis") filed a Complaint against the same Defendants that Threat named in her initial Complaint here. (Lewis Doc. No. 1.) On July 29, 2026, Lewis filed her Amended Complaint, adding Macklin as a Defendant and removing Worsencroft as a Defendant. (Lewis Doc. No. 12.) Therein, by contrast to Threat, Lewis brings five

Claims for Relief: Count I - Procedural Due Process; Count II - Liberty Interest Deprivation and Stigma-Plus; Count III - *Monell* Municipal Liability and Policy, Custom, and Practice; Count IV - Equal Protection and Race-Based Discrimination; and Count V - Breach of Employment Contract and Ohio Rev. Code § 3319.02. (*Id.*)

In her preliminary statement, Lewis alleges that:

> This case did not begin with an allegation of misconduct. It began with accountability. Plaintiff Khalisha A. Lewis, an African American woman, a licensed Ohio educator, and an eight year veteran Head Principal of Bedford High School with an unblemished disciplinary record and uniformly positive evaluations, spent the 2024–2025 school year doing precisely what her position required: holding building security personnel accountable for insubordination, dishonesty, and repeated failures to perform their duties. The individuals she held accountable responded not with correction but with a narrative, an unsubstantiated, untested, and uncorroborated claim that Ms. Lewis was intoxicated on school grounds.
>
> That narrative was circulated by the very security staff whose conduct Ms. Lewis had documented, and it found a receptive audience in Superintendent Dr. Cassandra J. Johnson, who by September 2025 had her own institutional motive to protect the District's security unit: its senior officer had become president of the classified-staff union, and the Superintendent was negotiating labor peace with him to avert a district-wide strike. When forced to choose, the District removed the principal who raised concerns and shielded the personnel who were the source of them.
>
> The procedural failures that followed are fixed by the District's own record. Ms. Lewis was sent home on September 29, 2025, and received a leave notice roughly four hours later, which on its face bore a date of August 25, 2025, more than a month before she was removed, indicating that the decision to remove her had been made well in advance of the events the District claimed to be investigating. She was never afforded a meaningful pre-deprivation hearing under Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). The charges shifted after the fact. The investigation expanded over more than five months, without a defined timeline or resolution date, and no alcohol or drug test was ever administered. And when the investigation ended, the District did not terminate Ms. Lewis. It offered her a Last Chance Agreement conditioning her return on five years of random testing, a ten-day unpaid suspension, the surrender of her rights under Ohio Revised Code § 3319.02, and a waiver of all federal and state civil-rights claims. A district holding evidence sufficient to terminate does not offer a last chance. The offer is itself proof of the weakness of the charges.

> The District's contemporaneous records refute its own narrative. On the morning after the September 20, 2025, Homecoming Dance, the event at which Ms. Lewis was later accused of neglecting her duties, she briefed Superintendent Johnson directly by text about the parent disturbance and the police response. The Superintendent's real-time reply was not concern, criticism, or any suggestion of impairment; it was: "That is terrible. You guys definitely need to do a restraining order." That exchange forecloses the after-the-fact claim that Ms. Lewis neglected her duties or was impaired that night. Ms. Lewis's experience was not isolated, and even after litigation forced her reinstatement, the fabrication continued: in May 2026 the head of security again reported that Ms. Lewis was intoxicated, this time at a graduation ceremony the two never attended together.

(*Id.*)

### B. Allegations in Reginald Walker's Amended Complaint

On April 20, 2026, like Threat and Lewis, Reginald Walker ("Walker") filed his Complaint against the same Defendants. (Walker Doc. No. 1.) Walker filed a First Amended Complaint on July 28, 2026. Just like the Amended Complaint that Threat and Lewis filed, respectively, on July 28, 2026, and July 29, 2026, Walker's Amended Complaint added Macklin as a Defendant. In his Amended Complaint, Walker alleges ten Causes of Action: Count I - First Amendment Retaliation; Count II - Procedural Due Process; Count III - Liberty Interest Deprivation and Stigma-Plus; Count IV - Equal Protection and Race-Based Selective Enforcement; Count V - Race Discrimination; Count VI - *Monell* Municipal Liability; Count VII - Supervisory Liability; Count VIII - Defamation *per se*; Count IX - Stored Communications Act and 18 U.S.C. § 2701; and Count X - Breach of Employment Contract.

In his preliminary statement, Walker alleges that:

> This action arises from the Bedford City School District's constitutionally deficient removal and public defamation of Reginald C. Walker, a licensed Ohio educator, school administrator, Assistant Principal, and Career and Technical Education ("CTE") Coordinator at Bedford High School, who was stripped of his position without warning, without written charges, and without any opportunity to respond, and then publicly branded as a "severe misconduct" case before a single finding of

> fact had been made, and who refused, days earlier, to fabricate false allegations of alcohol abuse against his supervisor at the Superintendent's demand.
>
> The District's constitutional failures are documented in its own commissioned investigative record. The independent investigator found that the most serious allegation against Mr. Walker, intoxication, was unsubstantiated. The investigator found that the practices for which Mr. Walker received formal public discipline were openly acknowledged by multiple administrators across the same building as common institutional conduct. The investigator recommended a three-day unpaid suspension, not a public "severe misconduct" designation, not six-plus months of removal from his duties, and not the constitutional isolation Mr. Walker endured. The phrase "severe misconduct" appears nowhere in the report the District itself commissioned.
>
> Mr. Walker's refusal to fabricate false statements against his supervisor was constitutionally protected. His removal was retaliatory. The "severe misconduct" label, which under the District's own policies and common educational-community standards encompasses criminal conduct, sexual abuse of students, and falsification of records, was false, was published to the community, and has never been retracted. And the disparity between what the investigator found and what the District did to Mr. Walker is racialized in its execution: after Mr. Walker's removal, the District resurrected an eliminated CTE position and placed a white male into duties that had been Mr. Walker's.
>
> Mr. Walker's experience is not isolated. Within the same six-month period, September 2025 through March 2026, Superintendent Dr. Cassandra J. Johnson, the then-sitting Superintendent and the District's final policymaker on personnel matters, placed additional senior administrators on administrative leave using the identical constitutional template. The pattern is documented across the District's own records and independent accounts. Municipal liability is independently established.

(*Id.*)

### C. Allegations in Clarie Gowing's Amended Complaint

Claire Gowing ("Gowing") filed her Complaint on June 2, 2026. (Gowling Doc. No. 1.) In her Complaint, Gowing named most of the Defendants here—Bedford, Carter, Akins, Boyington, Callender and Morton. (*Id.*) Gowing did not name Worsencroft as a Defendant and instead named Thomas Evans as a Defendant. (*Id.*) And just like the other Plaintiffs, Gowing amended her

Complaint, adding Macklin as a Defendant. (Gowling Doc. No. 9.) Therein Gowing brings eight Causes of Action: Count I - First Amendment Retaliation; Count II - Procedural Due Process; Count III - Liberty Interest Deprivation and Stigma-Plus; Count IV - *Monell* Municipal Liability; Count V - Supervisory Liability; Count VI - Defamation *Per Se*; Count VII - Stored Communications Act and 18 U.S.C. § 2701; and VIII - Breach of Employment Contract. (*Id.*)

In her preliminary statement, Gowing alleges that:

> This action arises from a sustained campaign of constitutional violation, defamation, and retaliation directed at Plaintiff Claire B. Gowing, a twenty-year veteran public educator and Assistant Principal at Bedford High School, because she refused to manufacture false allegations of alcohol abuse against her direct supervisor at the demand of the Superintendent of the Bedford City School District. In the first week of October 2025, Defendant Dr. Cassandra J. Johnson, then and now the Superintendent of the Bedford City School District, summoned Plaintiff to a meeting in the presence of the District's Human Resources Director. There, Defendant Johnson demanded that Plaintiff state, falsely, that her direct supervisor, Principal Khalisha A. Lewis, was "drinking on the job." Plaintiff refused. Defendant Johnson, visibly angry, told Plaintiff, "I see who you are now," that Plaintiff had "changed in the six years" she had worked for the District "and not for the better," and, as Plaintiff was leaving the room, "I'll deal with you later." Five weeks later, Defendant Johnson made good on that threat. On October 31, 2025, Defendant Johnson signed a letter, copied to the President of the Board and another Board member, placing Plaintiff on paid administrative leave for unspecified allegations of intoxication on duty, improper handling of confiscated student vapes, and unspecified discrepancies in student discipline. The very allegation Defendant Johnson had tried to manufacture against Principal Lewis was now turned against the administrator who had refused to manufacture it.
>
> Plaintiff was given no written notice of any specific allegation before being placed on leave. She was given no opportunity to respond. She was given no Loudermill hearing. She was kept on administrative leave for approximately one hundred and eighty (180) days. During that time, the District conducted an investigation involving interviews of more than twenty individuals, communicated false and defamatory allegations to a wide circle of community members, and produced no finding of misconduct. On April 23, 2026, the District, through Interim Superintendent Thomas Evans, confirmed in writing that "insufficient evidence exists to support a finding of misconduct and no discipline will be issued." Plaintiff's employment with the District continued following the clearance. Plaintiff resigned from the District effective June 30, 2026, due to concerns over

> her continued job security in light of the sustained, unsubstantiated allegations against her. She is now employed by Kenston Local Schools.
>
> Plaintiff's experience is not isolated. Within the same six-month period, September 2025 through March 2026, Defendant Johnson placed three senior Bedford administrators on administrative leave using the identical constitutional template: removal without pre-deprivation process; refusal to disclose specific allegations; sustained leave without procedural foundation; and ultimate inability to substantiate the asserted bases. Principal Khalisha A. Lewis was placed on leave on September 29, 2025, five weeks before Plaintiff. Assistant Principal and Career and Technical Education (CTE) Coordinator Reginald C. Walker was placed on leave on October 3, 2025. The District's Human Resources Director, Dr. JaTina N. Threat, was placed on leave on March 6, 2026, after voicing concerns about Defendant Johnson's practice of removing administrators without procedural foundation. Each of those three individuals has independently pursued civil-rights litigation against the District arising from materially similar conduct: Lewis v. Bedford City Sch. Dist. Bd. of Educ., No. 1:26-cv-00941 (N.D. Ohio) (Fleming, J.); Walker v. Bedford City Sch. Dist. Bd. of Educ., No. 1:26-cv-00943 (N.D. Ohio) (Nugent, J.); and Threat v. Bedford City Sch. Dist. Bd. of Educ., No. 1:26-cv-00938 (N.D. Ohio) (Barker, P.). Principal Lewis returned to work in the same position, salary, and benefits on June 4, 2026, and Dr. Threat was placed on administrative leave and resigned in June 2026, facts Defendants have since admitted in the parallel Walker matter. The pattern is documented across independent accounts; it is not a pattern constructed by counsel.
>
> The Board of Education was on notice of this pattern throughout. The historical Board, Defendants Carter, Macklin, Akins, and Boyington, received Plaintiff's December 10, 2025, written notice of the unconstitutional retaliation and the procedural deficiencies of her leave. Defendant Carter, then Board President, ratified the procedural posture on the Board's behalf on December 17, 2025, in a written response that admitted Plaintiff had not been given the specifics of any allegation and that she would receive an opportunity to respond only "should the discipline process progress," that is, after rather than before the deprivation. During this same period, on information and belief, the Board commissioned its own investigation of Superintendent Johnson and, in March 2026, placed Superintendent Johnson herself on administrative leave, confirming that the Board possessed the authority to intervene throughout the period of Plaintiff's deprivation. The current Board, which includes new Members Callender and Morton in addition to the holdover Members named above, continued the violation by failing to provide post-clearance remediation: no name-clearing hearing, no public retraction, no affirmative correction of the personnel file.

(*Id.*)

### D. The parties' arguments

In her Motion, Threat argues that the Court should reassign the four actions to the undersigned under Local Rule 3.1(b)(3) and should consolidate them under Fed. R. Civ. P. 42.[1] (Doc. No. 15.) As to reassignment, Threat asserts that "Threat and Walker name an identical group of nine defendants," "Lewis names that same group with the exception of Mr. Worsencroft," and that "Gowing names the District, Superintendent Johnson, Interim Superintendent Thomas Evans, and Board members Akins, Boyington, Callender, Carter, and Morton." (*Id.* at PageID #168–69.) Threat points out that "[c]ounsel is identical across all four." (*Id.* at PageID #169.) Threat also points out that "[t]hree counts appear in all four operative pleadings: procedural due process under the Fourteenth Amendment and 42 U.S.C. § 1983; deprivation of a liberty interest under the stigma-plus doctrine; and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)" and that "[q]ualified immunity is contested as to the individual defendants in all four." (*Id.*) According to Threat, "[e]ach action will accordingly require a Judicial Officer of this Court to determine the same threshold questions: whether the plaintiff held a constitutionally protected property or liberty interest in continued employment; what process was due before that interest could be impaired; whether the individual defendants are entitled to qualified immunity; and whether the District's conduct is attributable to it as policy or custom." (*Id.*) And Threat contends that "[n]o Judicial Officer can adjudicate the municipal-liability count in any one of these four actions without confronting allegations concerning the other three, allegations that are themselves the subject of actions pending before three other Judicial Officers of this Court." (*Id.* at PageID #170.)

In Defendants' Opposition, they argue that "Plaintiff has tethered reassignment to

[1] Threat has since withdrawn her request for consolidation, so the Court will not address those arguments here.

consolidation" and because consolidation would be improper under Rule 42, the Court "should deny Plaintiff's request to reassign related cases." (Doc. No. 16, PageID #189.) Defendants point out that "[a]lthough the four Plaintiffs were all employed by the same school district, the cases name many of the same defendants and involve some of the same alleged conduct, their claims arise from separate factual circumstances and rest on separate factual allegations." (*Id.* at PageID #184.) According to Defendants, "a decision-maker could conclude that a particular legal requirement is satisfied as to one Plaintiff but not satisfied as to another, based on the distinct facts and circumstances alleged in each of these four cases." (*Id.*)

Defendants highlight the following differences between the allegations set forth by each Plaintiff in his or her case. According to Defendants "Walker alleges that on Oct. 1 – 2, 2025, Superintendent Johnson pressured him to say Principal Lewis was intoxicated and threatened 'consequences' when he refused to do so" and that "his District email was accessed without authorization at Superintendent Johnson's direction." (*Id.* at PageID #184.) Defendants assert that Lewis "alleges that from late 2024 through September 2025 she documented security-staff deficiencies and sought reassignment of an officer but faced escalating scrutiny along with race-based scrutiny" and that "the District proposed a coercive Last Chance Agreement." (*Id.* at PageID #185.) Defendants then assert that Threat "alleges that after the Board retained an investigator to examine Superintendent Johnson, Threat raised due-process and integrity concerns at a recorded Jan. 30, 2026, meeting and then was sidelined, pressured to recant, and led to believe her email was monitored," that "her placement on paid leave for an off-duty Facebook comment was pretextual," that her email was disabled and security retrieved her property without specific charges or an opportunity to respond," and that "Worsencroft accessed her email." (*Id.*) Defendants points out that Gowing

"alleges in her First Amended Complaint that her placement on paid administrative leave violated her rights under *Loudermill*" and that her Amended Complaint "makes additional allegations regarding unauthorized access to her District email during leave and that, the District failed to provide a name-clearing hearing or correct her file." (*Id.*)

Threat narrows the scope of her requested relief in her Reply. Threat asserts that she "no longer seeks consolidation under Federal Rule of Civil Procedure 42(a), and the request in the Motion for a single consolidated briefing schedule on any Rule 12(c) motion is withdrawn." (Doc. No. 17, PageID #191.) Now, Threat "seeks only that the three related actions be reassigned to this Court as related under Local Rule 3.1(b)(3)." (*Id.*) According to Threat, "Defendants concede that the four actions 'involve some common issues'" and that this "concession supports relatedness under Local Rule 3.1(b)(3)." (*Id.*) Moreover, Threat submits that "Defendants do not argue that the four actions are unrelated within the meaning of Local Rule 3.1(b)(3)" and thus "no argument in the Opposition reaches the relief Plaintiff now requests." (*Id.* at PageID# 193.) As to relatedness under Local Rule 3.1(b)(3), Threat asserts that "[a]ll four actions name Bedford City School District Board of Education and Superintendent Dr. Cassandra J. Johnson as defendants, and three of the four additionally name overlapping individual Board members." (*Id.* at PageID #195.) Threat contends that "[a]ll four require a determination of whether the respective plaintiffs possessed constitutionally protected property or liberty interests in continued employment, what process was constitutionally due, whether the overlapping individual defendants are entitled to qualified immunity, and whether the District's conduct is attributable to it as policy or custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), all governed by the same controlling authority." (*Id.*) Threat points out that "[e]ach of the four operative complaints expressly pleads the other three, by case number, as part of its

municipal-liability count." (*Id.*) Threat "asks only that one Judicial Officer apply the governing law consistently while evaluating the separate pleadings and records developed in each action." (*Id.* at PageID #196.)[2]

## II. Standard of Review

As explained by the Sixth Circuit, "[t]he interpretation and application of local rules 'are matters within the district court's discretion, [and] the district court's decision is reviewed for abuse of discretion.'" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 714 (6th Cir. 2006)); *see also Anthony v. BTR Auto. Sealing*, 339 F.3d 506, 516 (6th Cir. 2003) ("trial courts have inherent power to control their dockets"); *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) ("Whether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court, and the court's decision is reviewed for abuse of discretion"). "Only in rare cases will [the Sixth Circuit] question the exercise of discretion in connection with the application of local rules." *Martinez v. City of Memphis*, No. 25-5494, 2025 U.S. App. LEXIS 32322, at *5 (6th Cir. Dec. 8, 2025) (quoting *Crown Serv. Plaza Partners v. City of Rochester Hills*, No. 98-1581, 2000 U.S. App. LEXIS 9935 (6th Cir. May 8, 2000)).

## III. Analysis

Under Local Rule 3.1(b)(3), "[a] case may be re-assigned as related to an earlier assigned case with the concurrence of both the transferee and the transferor Judicial Officers, with or without a motion/notice by counsel." There is nothing mandatory in Local Rule 3.1(b)(3). The use of the word "may" in Local Rule 3.1(b)(3) implies that the Court has discretion in determining whether to

[2] Threat also distinguishes the authorities cited by Defendants concerning consolidation. Because Threat has withdrawn her request for consolidation, the Court does not address these arguments.

reassign a case as "related." *United Stated v. Watson*, 475 F. App'x 598, 599 (6th Cir. 2012) ("We have held that the use of the word 'may' as opposed to 'will,' for example, implies that the district court has discretion in determining whether to grant the motion.") (cleaned up); *Sneed v. Wireless PCS Ohio #1, LLC*, No. 1:16CV1875, 2017 U.S. Dist. LEXIS 31279, at *4 (N.D. Ohio Mar. 6, 2017) ("The use of the word 'may' indicates that the exercise of the court's discretion is involved"). Therefore, even if two or more case are "related," the Court has discretion to decline to reassign them.

After carefully considering the arguments raised by the parties, the Court exercises its discretion to deny Threat's Motion. The Court finds that the cases are not sufficiently related to warrant reassignment under Local Rule 3.1(b)(3) for the reasons set forth below.

First, the three actions that Threat seeks to reassign stem from a different set of events. Threat's case involves alleged retaliation against her for serving as a witness against Johnson. By contrast, Lewis, Walker, and Gowing's respective Amended Complaints all stem from different inciting events. Lewis' claims are founded upon alleged discipline based on claims that she was intoxicated on school grounds. The claims of Walker and Gowing are premised upon their alleged refusal to fabricate allegations that Lewis was drinking on the job, and the alleged discipline they received as a result. Put simply, those three cases all stem from Lewis supposedly drinking at work and the events that followed—but Threat's case does not.

But more importantly, each case is not dependent upon any other. Threat's position that the legal theories in each case are sufficiently related is overbroad. To be sure, each case raises similar claims for relief and similar legal theories. But none of the alleged claims could result in inconsistent results. For example, a finding by this Court that Defendants illegally retaliated against Gowing would not mean ipso facto that Defendants illegally retaliated against Walker. The Court would need

to review the facts specific to each case to determine whether Defendants retaliated against each plaintiff. Put simply, different judges can review each case and come to differing conclusions based upon the allegations unique to each plaintiff.

Threat's strongest argument pertains to her *Monell* claim, but that argument does not carry the day. Threat generically asserts in her Reply that "assignment to one Judicial Officer reduces the risk that overlapping legal and factual issues will be adjudicated inconsistently." (Doc. No. 17, PageID #196.) The only relevant "overlapping legal and factual issues" that Threat identifies is "whether the District's conduct is attributable to it as policy or custom." (Doc. No. 15, PageID #170.)

However, it appears from a review of Threat's Amended Complaint that Threat is not raising an "official policy" theory of *Monell* liability.[3] However, even if it can be construed as alleging an "official policy" theory of *Monell* liability, the alleged "official policy" is different in the other three cases. Lewis alleges that "Superintendent Johnson was at all relevant times the final policymaking authority for the District's employment decisions; her decisions constitute the District's official policy and independently subject it to liability." (Lewis Doc. No. 12.) Walker alleges that "Superintendent Johnson's October 3, 2025, decision to remove Mr. Walker, taken in her capacity as the District's final policymaker on administrator personnel actions, constitutes municipal policy." (Walker Doc. No. 10.) Gowing alleges that "a deliberate decision by an official with final policymaking authority on a single occasion is sufficient to establish municipal policy" and that "Defendant Johnson's October 31, 2025, decision to place Plaintiff on administrative leave . . .

[3] Sixth Circuit law recognizes four theories of *Monell* liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence [to] federal rights violations." *See*, *e.g.*, *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

constitutes such a decision." (Gowing Doc. No. 9.) Because the alleged "official policies" are different in each case (e.g. each alleged adverse employment action), there is no risk for inconsistent results.

And the timing and sequencing of events of each case is necessary to determine whether Bedford had a custom sufficient to establish *Monell* liability. In her Amended Complaint, Threat alleges - similar to Lewis, Walker and Gowing in their Amended Complaints - that "[w]ithin the six-month period, the District applied the same procedurally deficient template to four senior administrators, establishing a well-settled custom." Whether there was a custom at the time each alleged adverse employment is fact-dependent question. Was there a custom when the first "senior administrator" was subject to the "procedurally deficient template"? How about when the third "senior administrator" was subject to the "procedurally deficient template"? Simply put, whether there was a custom sufficient to trigger *Monell* liability will require an independent analysis as to each plaintiff. Thus, there is no risk of inconsistent rulings on whether there was a custom sufficient to trigger *Monell* liability.

Finally, the Court rejects Threat's assertion that "the alleged institutional pattern will be artificially fragmented among four judges, each addressing only one component of the pattern pleaded in the action before that judge." (Doc. No. 17, PageID #196.) Each plaintiff is represented by the same counsel, and Defendants are represented by the same counsel in each case. Assuming the cases survive past the pleadings stage, the parties will be able to coordinate discovery between these four cases, and the parties will be able to use evidence from one case in the other three cases. If needed, the undersigned will accommodate reasonable requests for extensions of time in this case to coordinate discovery with the other three cases.

To be sure, the Court recognizes that there are similarities between the four cases. The Court finds, however, that those similarities are not sufficient to warrant reassignment. For all these reasons, the Court declines to accept the other three cases as related under Local Rule 3.1(b)(3).

**IV. Conclusion**

For the reasons set forth herein, Threat's Motion (Doc. No. 15) is DENIED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: October 6, 2026